<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

JUAN THOMAS,                          :
                                      :    Civ. No. 15-6740 (RMB)
                Petitioner,           :
                                      :
         v.                           :         **OPINION**
                                      :
STEPHEN JOHNSON, et al.,              :
                                      :
                Respondents.          :
_____         :

**BUMB, DISTRICT JUDGE**

     Before the Court is the Petition for a writ of habeas corpus of Petitioner Juan Thomas ("Petitioner"), brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons set forth below, Petitioner's habeas petition is DENIED, and Petitioner is DENIED a certificate of appealability.

**I.    BACKGROUND**

     The following factual summary is taken from the opinion of the Superior Court of New Jersey, Appellate Division, in affirming the denial of Petitioner's post-conviction relief ("PCR") petition:

> Defendant was charged with numerous offenses relating to and including aggravated sexual assaults upon [N.], the son of defendant's live-in girlfriend and later wife. The indictment charged that the sexual assaults took place between October 1990 and October 1999, when [N.] was between the age of eight and seventeen years old. At trial, [N.] testified about numerous incidents of both

> physical and sexual assault. [N.] stated that defendant frequently penetrated him anally, forced him to perform fellatio upon defendant, performed fellatio on him, and provided him alcohol and marijuana. Defendant was found guilty on all counts at trial. The court imposed an aggregate sentence of sixty-five years in prison, with a parole disqualifier of forty-three years, six days. On direct appeal, we affirmed his conviction, but remanded for reconsideration of defendant's sentence based upon merger of offenses. . . . On remand, the court re-imposed the same sentence. We subsequently affirmed on a sentencing calendar.

(ECF No. 8-18 at 1-2.)

As noted in the opinion above, Petitioner appealed his conviction and sentence, and the Appellate Division affirmed the conviction on August 21, 2006, but remanded for sentencing issues related to merger and presumptive sentencing. (ECF No. 8-6.) The Supreme Court of New Jersey denied certification on November 15, 2006. (ECF No. 8-7.) Petitioner was resentenced on December 8, 2006 (ECF No. 8-8), and the Appellate Division affirmed the resentence on February 14, 2008.[1] (ECF No. 8-10.) Prior to the Appellate Division's affirmance on the resentencing, Petitioner filed a PCR petition, executed on July 10, 2007 (ECF No. 8-11), which was denied by the state court on November 7, 2008. (ECF No. 8-14.) Petitioner filed a notice of appeal, executed on April 27,

---

[1] Petitioner does not appear to have filed a petition for certification to the New Jersey Supreme Court on the matter of resentencing.

2012 (ECF No. 8-15) and the Appellate Division affirmed the denial of PCR on March 26, 2015. (ECF No. 8-18.) The New Jersey Supreme Court denied certification on July 20, 2015. (ECF No. 8-22.) Petitioner then filed a habeas petition with this court, executed on August 30, 2015, raising three grounds for habeas relief, two of which are identical but with different sub-claims:

1. Petitioner was deprived of life, liberty and property without due process of law in violation of the U.S. Const. Amend XIV.

2. Petitioner was denied his Sixth Amendment right to effective assistance of counsel during his trial and on appeal.

3. Petitioner was denied his Sixth Amendment right to effective assistance of counsel during his trial and on appeal.

(ECF No. 1 at 5-6.)

Prior to filing their Answer, Respondents made a motion to seal the case, because the state court record had previously been impounded for the protection of the victim, who was a minor at the time the offenses were committed. (ECF No. 7.) The Court, after briefing from both sides, granted Respondents' motion to seal the case. (ECF No. 14.) Respondents filed an Answer in which they argue the instant Petition is untimely, Grounds II and III are procedurally defaulted and the claims are meritless. (ECF No. 8 at 53–104.)

## II.  <u>PETITION IS TIME-BARRED</u>

The governing statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA") is found at 28 U.S.C. § 2244(d), which states in relevant part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court.  The limitation period shall run from the latest of-
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review
>
> . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection

28 U.S.C. § 2244(d)(1)-(2); <u>see also</u> <u>Jones v. Morton</u>, 195 F.3d 153, 157 (3d Cir. 1999).

Pursuant to § 2244(d), evaluation of the timeliness of a § 2254 petition requires a determination of, first, when the pertinent judgment became "final," and, second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."  The judgment is determined to be final by the conclusion of direct review, or the expiration of time for seeking such review, including the ninety-day period for filing a petition for writ of certiorari in the United States

Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

Here, Petitioner received his original judgment of conviction on June 4, 2004.  (ECF No. 8-4.)  He appealed, and the Supreme Court of New Jersey ultimately denied certification on November 15, 2006.  (ECF No. 8-7.)  On remand from the Appellate Division, Petitioner was resentenced by the trial court on December 8, 2006 (ECF No. 8-8), and the Appellate Division affirmed the new sentence on February 14, 2008.[2]  (ECF No. 8-10.)  Petitioner then had 20 days to file a petition for certification with the New Jersey Supreme Court, but does not appear to have done so.  See N.J. Ct. R. 2:12-3(a).  Accordingly, his judgment became final on March 5, 2008[3], on the date when his time to file a petition for certification to the New Jersey Supreme Court expired, after which the one-year statute of limitations began to run.  See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired."); Thompson v. Adm'r New Jersey

---

[2]    The document has two stamped dates, of February 11, and February 14.  The Court will refer to the later date, in Petitioner's favor.

[3]    The year 2008 was a leap year.

State Prison, 701 F. App'x 118, 122 (3d Cir. 2017) (explaining the correct start date for calculating the statute of limitations period is the day after the judgment became final).

A properly filed PCR petition will statutorily toll the AEDPA limitations period. See 28 U.S.C. § 2244(d)(2). In this case, Petitioner filed for PCR on July 10, 2007, before his judgment became final (ECF No. 8-11), and the trial court denied PCR on November 7, 2008. (ECF No. 8-14.) Nearly three and a half years later, Petitioner filed a notice of appeal, which he executed on April 27, 2012. (ECF No. 8-15). Respondents argue that because Petitioner waited over three years to filed his notice of appeal with the Appellate Division, he is not entitled to statutory tolling during that time, thus making the instant Petition time-barred. (ECF No. 8 at 56-57.) They further argue that Petitioner is not entitled to equitable tolling because he has provided no explanation for his delay. (Id. at 58-62.) The Court agrees. See generally, Carey v. Saffold, 536 U.S. 214, 219 (2002) (explaining that a PCR petition is pending for statutory tolling purposes only where the petitioner timely appeals his PCR petition through the state courts); see also N.J. Ct. R. 2:4-1(a) (delineating 45 days to appeal from final judgements or orders of judges). Thus, because Petitioner waited over three years to file his notice of appeal from the denial of PCR, Petitioner's habeas Petition is time-barred. Absent a showing by Petitioner that he

6

is entitled to equitable tolling, Petitioner's current habeas
Petition is untimely.

To be entitled to equitable tolling, Petitioner must show
"(1) that he faced extraordinary circumstances that stood in the
way of timely filing, and (2) that he exercised reasonable
diligence." United States v. Johnson, 590 F. App'x 176, 179 (3d
Cir. 2014) (internal citation and quotations omitted). Further,
while equitable tolling has been applied to the habeas limitations
period, it "is a remedy which should be invoked only sparingly."
United States v. Bass, 268 F. App'x 196, 199 (3d Cir. 2008)
(internal citations and quotations omitted). In his reply brief,
Petitioner states only that "[a] review of the history of this
case will establish that the Petition for Writ of Habeas Corpus is
not time barred." (ECF No. 10 at 1.) While not mentioned by
Petitioner, the Court notes that in Petitioner's notice of appeal
to the Appellate Division in appealing his denial of PCR, he
provided copies of letters he sent to the Camden County Court
House, the Camden County Hall of Justice, and the New Jersey Office
of the Public Defender, between June 2010 and March 2012, stating
that he is legally blind and expressing concern that he was
"abandon[ed]" by his PCR attorney, that he was not made aware of
the disposition of his PCR petition, and that he was not certain
if an appeal had been filed. (ECF No. 8-15 at 6-11.) These
letters, however, only began in June of 2010, over a year and a

half after the disposition of his PCR petition.  See, e.g., Harper v. Ercole, 648 F.3d 132, 139 (2d Cir. 2011) ("a party seeking equitable tolling must show diligent pursuit of his claim *throughout the period he seeks to toll*.") (emphasis in original) (internal quotations omitted); Garcia v. Yates, 422 F. App'x 584, 585 (9th Cir. 2011) (denying equitable tolling where Petitioner had "not shown that, throughout the period for which tolling [wa]s sought, he was diligently pursuing" his claim); Gilkes v. Hendricks, No. 14-3209, 2017 WL 4179812, at *4 (D.N.J. Sept. 20, 2017) ("to be entitled to equitable tolling, a habeas petitioner must show . . . that he exercised reasonable diligence . . . throughout the period to be tolled.") (internal citations and quotations omitted).  Nor does the fact that he is legally blind entitle him to equitable tolling, because he has not shown that due to his blindness he was unable to file an appeal.  See Ross v. Varano, 712 F.3d 784, 803 (3d Cir. 2013) ("for a petitioner to obtain relief [through equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition.").  Thus, Petitioner has not demonstrated that he is entitled to equitable tolling between November 7, 2008 when his PCR petition was denied, and June of 2010, when he began inquiring into his appeal.  Accordingly, the instant Petition is untimely.

Nevertheless, even if Petitioner could somehow argue that he is entitled to equitable tolling, his claims fail on the merits.[4]

### III. IN THE ALTERNATIVE, PETITION FAILS ON THE MERITS

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. See Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013); see also Parker v. Matthews, 567 U.S. 37, 40-41 (2012). Under 28 U.S.C. § 2244, district courts are required to give great deference to the determinations of the state trial and appellate courts. See Renico v. Lett, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4] Normally, the Court would afford Petitioner an additional opportunity to demonstrate why his Petition is not time-barred under 28 U.S.C. § 2244(d). Here, because the Court finds the Petition fails on the merits, such opportunity is not necessary.

> (2) resulted in a decision that was based on
> an unreasonable determination of the facts
> in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. See Woods v. Donald, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Id. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Stevens v. Delaware Corr. Ctr., 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures

that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'"  Id. (citing United States v. Bendolph, 409 F.3d 155, 173 (3d Cir. 2005) (quoting Duckworth v. Serrano, 454 U.S. 1, 3 (1981)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2).  See Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005).

## A. Ground One: Due Process Claims

In his facts supporting Ground One, Petitioner raises identical facts to those he raised on direct appeal.[5]  All the claims lack merit.

### 1. Improper Sentence

While Petitioner's disjointed arguments are not a model of clarity, Petitioner states that his sentence on counts one, two and five, is excessive and must be reconsidered in light of State v. Natale, 878 A.2d 724 (N.J. 2005), and he raises "merger questions".  (ECF No. 1 at 5–6.)  Petitioner raised these claims on direct appeal and the Appellate Division remanded on the issues

---

[5]    The Court has not been provided with Petitioner's brief on direct appeal, in which he raised these claims.  On their index of exhibits, Respondents note that the brief and appendix are "unavailable at present, but being sought".  (ECF No. 8-1 at 2.) However, in the instant Petition, Petitioner outlines precisely the issues he advanced on his direct appeal.  (D.E. No. 1 at 2.)

of merger and presumptive sentencing. However, after Petitioner was resentenced, and the new sentence was affirmed on appeal, Petitioner never filed a petition for certification with the New Jersey Supreme Court. Thus, his claims appear unexhausted. See, e.g., O'Sullivan v. Boerekel, 526 U.S. 838 (1999) (explaining that the exhaustion requirement is satisfied only if a petitioner's federal claims have been fairly presented to each level of the state court, including the state's highest court). Nevertheless, the Court finds the claims meritless.

On the issue of merger, Petitioner's argument is now moot. Subsequent to the Appellate Division's remand order, the trial court merged the original sixteen counts into six before the resentencing, and the Appellate Division affirmed. (See ECF No. 8-10; ECF No. 8-37 at 6). Further, as the Appellate Division decision affirming the resentencing notes, Petitioner did not appeal the issue of merger after he was resentenced. (See ECF No. 8-10.) Because Petitioner has provided no support for his contention that merger questions still remain after the resentencing, the Court will deny this claim as moot.

With respect to the excessive nature of his sentence on counts one, two and five, Petitioner cites to Natale, supra, 878 A.2d 724. In Natale, decided in 2005, the New Jersey Supreme Court eliminated presumptive sentencing ranges that were codified in the New Jersey Code of Criminal Justice, stating the decision was to

12

apply retroactively to all cases on direct appeal. Thus, here, because Petitioner's claim was on direct appeal at the time Natale was decided, and because Petitioner's sentence on counts one, two and five exceeded the presumptive sentencing range, the Appellate Division remanded on those counts. (ECF No. 8-6 at 18.) Petitioner was resentenced, and the judge, weighing the aggravating factors, sentenced Petitioner to the same sentence, and the Appellate Division affirmed. (ECF No. 8-10.) The Appellate Division explained: "we are satisfied that the presumptive term did not influence the weighing process and the sentence imposed in this case. We are also satisfied that the findings of fact regarding aggravating and mitigating factors were based on competent and credible evidence in the record . . ." (Id.)

State sentences are generally matters of state law. See Chapman v. United States, 500 U.S. 453, 465 (1991) ("a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment") (citations omitted); see also Reid v. Ricci, No. 07-3815, 2008 WL 2984207, at *12 (D.N.J. July 31, 2008) ("absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth

13

Amendment, or that it is arbitrary or otherwise in violation of due process . . . the legality of [a Petitioner's] state court sentence is a question of state law). Here, on count one, for the crime of Endangering the Welfare of a Child, a second degree crime, see N.J. Stat. Ann. § 2C:24-4a, Petitioner was sentenced to 10 years imprisonment, within the range outlined under N.J. Stat. Ann. § 2C:43-6 for a second degree crime. (ECF No. 8-8.) On count two, for the crime of Aggravated Sexual Assault, a first degree crime, see N.J. Stat. Ann. § 2C:14-2a, Petitioner was sentenced to 20 years imprisonment, again within the range outlined under N.J. Stat. Ann. § 2C:43-6 for a first degree crime.  On the remaining counts, three, four, ten, and eleven, also for the crime of Aggravated Sexual Assault, Petitioner was sentenced to 15 years imprisonment within the range prescribed by statute for first degree crimes.[6]  The Court does not find the sentence cruel and unusual, or arbitrary. [7]  See, e.g., Apprendi v. New Jersey, 530

---

[6]    Count Five appears to have been merged with count two, and Petitioner was not resentenced on count five. (See ECF No. 8-8 at 5.)

[7]    Nor does the Court find Blakely v. Washington, 542 U.S. 296 (2004) applicable.  In Blakely, the trial court sentenced the defendant to more than three years beyond the 53-month statutory maximum, on the basis that he acted with "deliberate cruelty." 542 U.S. at 303.  The Supreme Court reversed explaining that it violates a defendant's Sixth Amendment right to a jury trial where the facts supporting such a finding are neither found by the jury, nor admitted to by the defendant.  Id. at 303-04.  There, the sentence went well beyond the outer limit of the ordinary sentencing range.  That is not the case here.

U.S. 466, 481 (2000) ("we should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion . . . in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case") (emphasis in original); Lockyer v. Andrade, 538 U.S. 63, 77 (2003) (explaining that a state sentence raises federal constitutional concerns only when it is grossly disproportionate to the crime committed); United States v. Miknevich, 638 F.3d 178, 185-86 (3d Cir. 2011) (explaining that the Eighth Amendment only forbids "punishment grossly disproportionate to the severity of the crime . . .a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.") (internal quotations and citations omitted).

To the extent Petitioner is claiming that his consecutive sentences violated his constitutional rights, the Court finds the claim meritless. In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court held that while the Eighth Amendment establishes that a "gross disproportionality principle is applicable to sentences for terms of years," id. at 72, "the precise contours of [the principle] are unclear, applicable only in the 'exceedingly rare' and 'extreme' cases." Id. at 73. In this case, the Appellate Division affirmed Petitioner's sentence,

despite its length, finding the aggravating and mitigating factors were based on evidence from the record. When Petitioner was resentenced by the law division, the judge explained the aggravating factors present, including Petitioner's extensive prior criminal record and the seriousness of the offense, all of which are apparent from the record and trial transcript. (ECF No. 8-8 at 6.) Based on these facts, it is clear that this is not one of those rare or extreme cases where a criminal defendant's sentence would be considered grossly disproportionate to the crime of which he was convicted. Thus, Petitioner has failed to demonstrate that the state court's sentence was arbitrary or cruel and unusual. Therefore, Petitioner is denied relief on this claim.

**2. Improper Jury Charge**

Petitioner next argues that the jury charge and verdict sheet as they related to the No Early Release Act ("NERA") were ambiguous such that the "85% percent parole disqualifiers imposed thereon [must] be vacated". (ECF No. 1 at 5.) Petitioner raised this claim on direct appeal, and the Appellate Division affirmed, explaining "the judge adequately instructed the jury on the No Early Release program (NERA)." (ECF No. 8-6 at 6.)

It is not the role of federal courts to review state court jury instruction rulings that are based on state law. Rather, federal courts are required "to determine whether [a petitioner] 'is in custody in violation of the Constitution or laws or treaties

of the United States.'" Barkley v. Ortiz, 209 F. App'x 120, 124 (3d Cir. 2006) (quoting 28 U.S.C. § 2254); see also Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71–72. Rather, the habeas court must consider "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process [under the Fourteenth Amendment] . . . not merely whether the instruction is undesirable, erroneous, or even universally condemned." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (internal citations and quotations omitted). A habeas petitioner must establish that the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Further, it is "well established" that the instruction "may not be judged in artificial isolation," but must be viewed in the context of the overall charge and the trial record. Cupp v. Naughton, 414 U.S. 141, 146 (1973).

Here, the jury instruction related to NERA rests purely on matters of state law and Petitioner fails to raise a constitutional issue. Under NERA, a person convicted of certain enumerated first or second-degree offenses must serve a minimum of 85% of the

sentence imposed, before becoming eligible for parole.   See N.J. Stat. Ann. § 2C:43-7.   Because the claim rests purely on state law, it is not proper for federal habeas review.   Therefore, the Court denies relief on this claim.

   3. **Summation**

   Petitioner next argues that the "prosecutor's summation exceeded the bounds of propriety" without providing further explanation. (ECF No. 1 at 5.)   The Appellate Division, on direct appeal, addressed this claim stating "the prosecutor's summation was in response to defendant's argument or based upon the evidence and was within permitted bounds." (ECF No. 8-6 at 6.)   The Supreme Court has explained that a prosecutor's arguments on summation will only result in a constitutional violation if "the argument rendered the trial unfair."   Darden v. Wainwright, 477 U.S. 168, 179 (1986).   "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. . .[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."   Id. at 181 (internal citations and quotation omitted).

   Here, a review of the prosecutor's summation indicates that the state court decision rejecting this claim did not violate clearly established federal law.   Combing through the record, there simply is nothing to indicate that the summation rendered the trial

18

fundamentally unfair. There was ample evidence that Petitioner committed the crimes of which he was convicted. (See, e.g., ECF No. 8-27 at 25; ECF No. 8-31 at 47) (in which the victim's sisters testified to observing Petitioner engaged in sexual acts with the victim). Further, the judge's jury instruction was comprehensive and reminded the jury they are the exclusive judges of the evidence, and any statements made by counsels does not constitute evidence. (ECF No. 8-33 at 81.) Therefore, Petitioner has failed to show he is entitled to relief on this claim.

### 4. Inadmissible Evidence

Petitioner next argues that he was denied a fair trial as a result of testimony elicited from a State's witness that indicated Petitioner had committed other criminal acts. (ECF No. 1 at 6.) Petitioner raised this claim on direct appeal, and the Appellate Division addressed this claim, stating: "[t]he prosecutor should not have asked a witness about defendant's threats to others, but the Judge's prompt instruction to disregard was sufficient to cure any prejudice." (ECF No. 8-6 at 6.)

During direct examination, the victim's cousin testified that Petitioner had threatened to kill the victim. (ECF No. 8-27 at 75.) The State then questioned the witness if Petitioner ever threatened to kill anybody else, and the witness said he had. (Id.) Defense counsel objected and the judge gave an immediate

curative instruction to the jury, telling them to disregard that testimony. (Id. at 76.)

Petitioner appears to raise a purely state law claim related to witness testimony. To the extent this can be raised as a constitutional claim, the result is harmless. See Eley, 712 F.3d at 847 (explaining that unless a constitutional error results in "actual prejudice," it will be considered harmless). As the Court has already emphasized, the evidence against Petitioner was plentiful; the victim's testimony recounted many acts of forced sex, and the victim's sisters testified to observing Petitioner engaged in sexual acts with the victim. Further, the state court notes that the judge gave a curative instruction to disregard that testimony. See Greer v. Miller, 483 U.S. 756, 767 n.8 (1987) (explaining that "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it . . ."); see also Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Without more, the Court finds that the state court decision did not violate clearly established federal law in rejecting this claim. Therefore, Petitioner will be denied relief on this claim.

### 5. Admissibility of Prior Convictions and Drug Use

Petitioner next argues that the trial court deprived him of a fair trial by admitting his prior convictions for the purpose of impeachment should Petitioner have chosen to testify. In addition,

he argues he was prejudiced by testimony elicited related to his past drug use.

The Appellate Division rejected these claims, explaining, "evidence of defendant's drug use was *res gastae* and admissible. To the extent plain error standards are implicated, see R. 2:10-2, defendant has not satisfied the burden of showing that the asserted errors had the capacity to produce an unjust result." (ECF No. 8-6 at 6.)

These claim fails to raise a federal issue.  To rise to the level of a constitutional violation, a state court's evidentiary error must be "of such magnitude as to undermine the fundamental fairness of the entire trial." Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).  Further, the category of infractions that violate 'fundamental fairness' is "very narrow[ ]." Dowling v. United States, 493 U.S. 342, 352 (1990).  To the extent this can be raised as a federal issue, however, the claim is meritless.

Here, the state court conducted a hearing on the admissibility of Petitioner's past convictions.  (ECF No. 8-27.)  The judge heard from the State and defense counsel, and weighing the probative value against the possibility of prejudice and the remoteness of the crimes, ruled that Petitioner's first degree crimes would be admissible to impeach Petitioner, but not his third degree crimes. (Id. at 6-7.)  The judge explained that while the crimes had taken place nineteen years prior, based on the seriousness of the past

21

crimes, and because Petitioner had been incarcerated for 15 of those years as a result of his convictions, it would be proper to admit only for impeachment purposes. (Id. at 7.) The state court held a hearing, thoroughly explained its decision, and the Court is satisfied that the state court decision was not fundamentally unfair. See Keller, supra, 251 F.3d at 413. Further, petitioner chose not to testify, effectively waiving this argument. See Luce v. United States, 469 U.S. 38, 43 (1984) (explaining in the context of a federal defendant, "[w]e hold that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."). Because the alleged violation fails to raise a claim of constitutional magnitude, the claim is denied.

With respect to evidence elicited related to drug use, this simply does not raise a constitutional error. The victim's mother testified regarding a letter Petitioner had sent her in which he wrote that his mistakes were not because of him, "it was the drugs", and the State discussed the letter on summation. (ECF No. 8-29 at 59.) To the extent any error resulted from this or other testimony related to drug use, it simply did not render the trial fundamentally unfair. See Keller, supra, 251 F.3d at 413. As noted previously, there was substantial evidence demonstrating Petitioner's guilt, such that the minimal testimony related to drug use cannot have rendered the trial unfair. Therefore, the

state court's decision did not violate clearly established federal law and this claim is denied.

### 6. Evidence

In his last claim in Ground I, Petitioner states that his constitutional rights were violated based on "facts never submitted to the Grand Jury and returned in the indictment nor found by jury trial . . ." without any further explanation. (ECF No. 1 at 6.) Because Petitioner bears the burden of establishing his entitlement to relief on each claim, and he has failed to give any support for this claim, it must be denied. See Eley, 712 F.3d at 846; see also Parker, 567 U.S. at 40–41.

### B. Ground Two: Ineffective Assistance of Counsel

In Ground II, Petitioner states that his trial counsel was ineffective in failing to object to the indictment which spanned nine years, as it prevented Petitioner from preparing a proper defense. (ECF No. 1 at 6.)

The Appellate Division, in affirming the denial of PCR, addressed this claim as follows:[8]

> We find defendant's arguments unpersuasive and affirm substantially for the reasons stated by Judge Natal in his thorough decision. We add only the following.
>
> It is well-settled that to establish a claim of ineffective assistance of counsel, a

---

[8]    The Appellate Division decision relied on the oral decision and findings of Judge Natal. Those findings can be found in the transcript of the PCR relief hearing. (ECF No. 8-38.)

defendant must demonstrate the reasonable likelihood that his claim will ultimately succeed on the merits under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). The first prong requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Ibid. The test is whether "counsel's conduct fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064, 80 L. Ed. 2d 693. Under the second prong, a defendant must demonstrate that his counsel's errors prejudiced the defense to the extent that the defendant was deprived of a fair and reliable trial outcome. Id. To prove this element, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 699.

Initially, we point out that the contention that the indictment was deficient because it lacked specific dates of the alleged offenses is procedurally barred because the claim could have been raised on direct appeal but was not. See State v. Echols, 199 N.J. 344, 357 (2009); see also R. 3:22-4. Defendant has not presented any reasons for justifying relief from the procedural[] bar. See R. 3:22-4. Moreover, as Judge Natal's reasoning establishes, such a motion to dismiss the indictment would have failed based upon In re K.A.W. Given the conclusion that the motion would have been unsuccessful, there is no ineffective assistance of counsel. See Strickland, supra, 466 at 688, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693 (1984); State v. Fritz, 105 42, 52 (1987). Accordingly, defendant is not entitled to an evidentiary hearing because there is no prima facie showing of ineffectiveness. State v. Preciose, 129 N.J. 451, 462 (1992) (PCR court has the discretion to grant an evidentiary

24

> hearing only if a defendant establishes a prima facie showing in support of the requested relief).

(ECF No. 8-18 at 5-6.)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." Hinton v. Alabama, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." Strickland, 466 U.S. at 669.  To establish

25

prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." Id. at 1083.

The state court did not violate clearly established law in finding counsel was not deficient under Strickland. The state court found that Petitioner's argument failed under the second prong of Strickland, because even had trial counsel objected to the indictment, his motion would have been unsuccessful in light of In re K.A.W., 515 A.2d 1217 (N.J. 1986). There, the New Jersey Supreme Court explained that in certain circumstances the failure of a complaint to specify precise dates of an offense does not warrant dismissal of the complaint. "[B]ecause the precise date on which [an] offense of sexual assault occurs is not a legal constituent of the crime, the date need not be set forth in the complaint." Id. at 1221. This is because, "a literal application of the "date" and "time" provisions of the statute [N.J. Stat. Ann. § 2A:4A-30(a)(3)], and Rule [5:20-1(a)(3)] would effectively preclude prosecution of those who have sexually abused children who are unable to specify a date." Id. Further the opinion in K.A.W. laid out various factors to be assessed in determining whether the time span in an indictment is reasonable, including, age and intelligence of the victim, the extent to which the prosecutor sought to narrow the time frame and whether the offense was a continuous course of conduct. Id. at 1222. The transcript

26

of the PCR hearing demonstrates that the state court properly applied Strickland to the facts.  The judge noted, and PCR counsel conceded, that Petitioner was provided with the victim's statements to the detectives with respect to the dates of the offenses, such that Petitioner was provided notice to prepare an appropriate defense.  (Id. at 3.)  Further, the judge noted that the victim was only 8 years old at the time the offenses began, the victim testified that the offenses occurred between one and three times a week and the indictment spanned three separate time periods, corresponding to offenses committed when the parties lived in different locations.  Id. at 10.  Based upon these facts, the Court is satisfied that the state court decisions did not violate clearly established law.  Therefore, this claim for habeas relief is denied.

### C. Ground Three: Ineffective Assistance of Counsel

In his final ground for habeas relief, Petitioner raises identical grounds to those raised in his appeal from the denial of PCR.  He argues that the trial court erred in failing to grant him an evidentiary hearing on the issue of ineffective assistance of counsel and that his appellate and PCR counsels were ineffective. (ECF No. 1 at 6.)

In his brief on appeal from the denial of PCR, Petitioner elaborated on these claims.  He argued that because his trial counsel was ineffective in failing to object to the indictment,

the state court erred in failing to grant him an evidentiary hearing on that matter. (ECF No. 8-16 at 24-27.) The Appellate Division, in affirming the denial of PCR, found this claim meritless, without extended explanation:

> We find defendant's arguments unpersuasive and affirm substantially for the reasons stated by Judge Natal in his thorough decision.

(ECF No. 8-18 at 5.)

Judge Natal, first citing the standard laid out in Strickland, denied his claim in an oral decision, explaining:

> The scope of cross-examination of counsel demonstrates that when trial arrived, the petitioner was fairly appraised of the incidents that were included in this indictment. In addition, the breath of the cross-examination demonstrates the petitioner was provided with effective assistance of trial counsel because trial counsel was adequately prepared to attempt to impeach the victim's direct testimony. Furthermore, the cross-examination demonstrates that petitioner was not prejudiced by legal counsel. For all these reasons the Court finds the petition for post-conviction relief under indictment 771-02-01 should be denied.

(ECF No. 8-38 at 13.)

Petitioner's claim lacks merit. There is no federal right to an evidentiary hearing or other relief denied by a state PCR court. More specifically, infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. See, e.g., Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998) ("what occurred in the petitioner's collateral proceeding does not enter

into the habeas calculation"). Since errors in Petitioner's state
PCR proceedings, even if presumed present, were collateral to his
conviction and sentence, they could not give rise to a claim for
federal habeas relief. Id. at 954; see also Lambert v. Blackwell,
387 F.3d 210, 247 (3d Cir. 2004) ("[H]abeas proceedings are not
the appropriate forum for [petitioner] to pursue claims of error
at the PCRA proceeding."). Thus, Petitioner's claim is without
merit and must be denied.

Next, on appeal from the denial of PCR, Petitioner argued
that his appellate counsel, on direct appeal, was deficient in
failing to raise a claim that Petitioner's trial counsel was
ineffective in failing to object to the indictment. (ECF No. 8-
16 at 35-36.)

The Appellate Division, on appeal from the denial of PCR,
explained:

> A procedural bar also applies to defendant's
> contention that appellate counsel was
> ineffective for failing to argue that trial
> counsel was ineffective for not moving to
> dismiss the indictment. Based on our review
> of the record, this argument was not raised
> below and does not involve jurisdictional or
> public interest concerns, and should therefore
> be viewed as waived. State v. Arthur, 184
> N.J. 307, 327 (2005) (citing Neider v. Royal
> Indem. Ins. co., 62 229, 234 (1973) (an issue
> not properly preserved at the hearing level
> may not be considered at the appellate level
> unless the issue relates to jurisdiction or
> concerns matters of great public interest).
> Furthermore, even if the argument was raised
> below, it fails for the same reasons we noted

> that trial counsel was not ineffective for
> seeking dismissal of the indictment. Pursuant
> to In Re Kaw, a motion to dismiss would have
> been denied.

(ECF No. 8-18 at 6-7.)

Putting the issue of whether the claim is procedurally barred aside, the claim lacks merit. Because the Court has already found the underlying claim—that trial counsel was ineffective for failing to object to the indictment—meritless, appellate counsel cannot be ineffective for failing to raise a meritless argument. See, e.g., United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000) (explaining, that if an underlying claim "is not meritorious . . . defendants can not successfully argue that counsel's failure to raise the claim on direct appeal denied them their constitutional right of representation"); Moore v. Mitchell, 708 F.3d 760, 776 (6th Cir. 2013) ("a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit"); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("Failure to raise a meritless argument can never amount to ineffective assistance"). Thus, this claim for habeas relief is denied.

Finally, Petitioner argued in his brief on appeal from the denial of PCR that PCR counsel was ineffective because his brief failed to submit supporting documentation and failed to cite to the record. (ECF No. 8-16 at 39.) Further, Petitioner argued

that PCR counsel was ineffective in failing to raise a claim of ineffective assistance of appellate counsel. (Id. at 40.)

The Appellate Division, on appeal from the denial of PCR, rejected this claim:

> [D]efendant argues that his PCR counsel was ineffective for not submitting documentation with his brief in support of PCR or citing to trial transcript references and failing to contend that appellate counsel was ineffective for not arguing the indictment did not provide adequate notice of when the alleged assaults occurred. These arguments are raised for the first time before us, and fail procedurally as they were not raised below. Ibid. Nonetheless, on their merits, the arguments are unpersuasive. Defendant does not show how PCR counsel's performance was deficient or how the missing documentation or transcript references would have resulted in a different outcome. As noted, any argument by appellate counsel that the indictment was insufficient would have been unsuccessful. The alleged deficiencies therefore clearly fail to meet either the performance or the prejudice prong of the Strickland test.

(ECF No. 8-18 at 5, 7-8.)

While a claim of ineffective assistance of PCR counsel is generally not grounds for habeas relief, see 28 U.S.C. § 2254 (i), Petitioner cites to Martinez v. Ryan, 566 U.S. 1 (2012), stating "inadequate assistance of counsel during initial review collateral proceedings may now establish cause for a prisoner's default of a claim of ineffective assistance at trial." (ECF No. 10 at 4.) Here, however, the Appellate Division addressed Petitioner's claim on the merits, in addition to finding it procedurally barred. (ECF

31

No. 8-18 at 7-8.)  Thus, Martinez is likely not applicable because the substantive claim was in fact reviewed by the Appellate Division.  Nonetheless, to the extent the claim is viable under Martinez, the state court properly applied Strickland in denying this claim.  Petitioner has failed to show that had PCR counsel made the insertions in his brief, the outcome of the case would have been different.  As previously mentioned, the evidence against Petitioner was overwhelming.  Further, because Petitioner has failed to show that appellate counsel was ineffective, PCR counsel cannot be faulted for raising a general claim of ineffective assistance of appellate counsel.  As such, Petitioner fails to show he is entitled to relief on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Because jurists of reason would not disagree with

this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further and a certificate of appealability is denied.

### V.    <u>CONCLUSION</u>

For the reasons stated above, the Petition for habeas relief is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.


Dated: <u>May 11, 2018</u>                    s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**